## TANT v. GUESS.

1. FINDINGS OF FACT—LEASE AS SECURITY.—Where a mortgagee took a conveyance of a plantation from its owner, the mortgagor, and afterwards several annual leases, the mortgagor paying meanwhile all the taxes and erecting permanent and expensive improvements, without any rent demanded of him or charged against him, this court sustained the finding of

the Circuit Judge, that the leases were intended only as security for the application of the crops to the indebtedness by mortgagor to mortgagee.

2. IBID.—IBID.—A lease was executed by plaintiff to defendant before the defendant acquired the legal title, and was held by the trial judge, who heard the witnesses and their conflicting testimony, to have been unfairly obtained. *Held*, that this finding of fact must be sustained, and that the lease was not binding on plaintiff as an admission of title in plaintiff.

3. PRACTICE—EVIDENCE.—Appellant cannot claim that he was prevented from showing fully what occurred when a lease was executed, because the trial judge declined to hear further testimony to prove admissions by the lessee that he had rented.

4. ISSUES—PROOF—ADMISSIONS.—In action to redeem, plaintiff demanded proof by defendant of the balance due on the mortgage. The Circuit Judge correctly found such balance as shown by the testimony. *Held*, that it was too late for defendant to claim that a full statement would show a larger balance; nor could the plaintiff be held conclusively bound by an offer made to defendant, to pay a much larger sum, and declined, before action brought.

5. RES JUDICATA—REHEARING ON CIRCUIT—APPEAL.—A petition by appellant to remand the case to the Circuit Court, for full proof of accounts between mortgagor and mortgagee, refused, because, if intended as a motion to suspend the appeal for the purpose of enabling appellant to move for a new trial on Circuit on the ground of after-discovered evidence, it has been already decided (35 S. C., 605); if a petition for a rehearing in the court below, it could be made there only before appeal; and if to seek a consideration by this court of testimony not submitted on Circuit, this court cannot consider any additional facts.

Before IZLAR, J., Barnwell, March, 1891.

Action by James C. Tant against S. D. M. Guess, commenced in February, 1891. The Circuit decree was as follows:

The plaintiff brings his action to enjoin the defendant, his agents and attorneys, from proceeding to dispossess the plaintiff of the lands mentioned and described in the complaint, until this action is heard and determined; to require the defendant to establish the amount due him by the plaintiff on account of the purchase money of said lands; and to require defendant, upon the payment of the same, to deliver up the deed to said lands held by him to be cancelled; and for such other and further relief as may be just. The defendant resists the action of the plaintiff, claiming to be the owner of said

premises, and to have purchased the same for value, without notice of any legal rights or equities between the plaintiff and the defendant's grantor, and alleging that the plaintiff is the tenant of the defendant, holding over after the determination of his lease, and praying that the injunction be denied, a receiver of said premises be appointed to collect and receive the rents, and for the possession of the premises and the rents thereof.

The case was heard by me at the March, 1891, term of the Court of Common Pleas for Barnwell County. The facts as established by the testimony are as follows: Some time about the middle of December, 1868, one W. B. Dowling, who was then the owner of the lands in dispute, agreed by parol with James C. Tant, the plaintiff, to sell and convey to him the said lands, in consideration of the sum of seven hundred and fifty dollars, payable in three equal annual instalments; and that, upon the payment of the purchase money, he, W. B. Dowling, would make the plaintiff a title to said premises with warranty. On the 22d day of December, 1868, W. B. Dowling wrote the following letter to the plaintiff:

"*Mr. J. C. Tant:* You can go on the place to work on our bargain that we made, for you to give me seven hundred and fifty dollars, and you to pay one-third of it every year for three years, and then I will give you warranted titles when paid for. I will give you now sheriff's titles, as soon as I can get Mr. Patrick to fix them for me. (Signed)    W. B. DOWLING."

Upon the receipt of this letter, the plaintiff took possession of said lands, and has been in the continuous and uninterrupted occupation and enjoyment of the same up to the present time; and has from time to time, and at considerable expense, made valuable and permanent improvements thereon, by which the value of said premises has been largely increased. W. B. Dowling afterwards died, leaving of force his last will and testament, by which he appointed Jacob E. Free his executor, with power to sell and convey lands in settlement of his estate. On the 28th day of February, 1870, plaintiff placed in the hands of his attorney, F. Hay Gantt, Esq., one hundred and ninety dollars, to be applied towards the payment of the purchase money of said lands. The receipt of F. Hay Gantt, Esq.,

recites that the money is to be paid to Jacob E. Free, executor of the estate of W. B. Dowling, upon his signing and delivering a bond for titles to the said J. C. Tant, to be made in accordance with agreement given by W. B. Dowling in his lifetime. This money was paid over to Jacob E. Free, executor, on the 9th day of March, 1870. The bond for titles was not produced at the trial; the plaintiff, however, testifies to its existence. I am satisfied from the receipt of Mr. Gantt, and the testimony, that the bond for titles was executed and delivered by Jacob E. Free, executor, to the plaintiff. After this the plaintiff made other payments to the said executor on said lands.

In 1873, Jacob E. Free, executor, being desirous of closing the estate of his testator, required a full settlement from the plaintiff. He not being prepared to meet the debt in full, procured W. H. Wroton, a friend, to take up the indebtedness for him. W. H. Wroton having paid the balance of the purchase money due by plaintiff to the estate of W. B. Dowling, deceased, Jacob E. Free, as executor as aforesaid, on the 4th day of February, 1873, conveyed the said premises to the said W. H. Wroton, he agreeing with the plaintiff by parol to extend the time for the payment of the balance of the purchase money paid by him for two years, and to convey the land to plaintiff upon the payment of the same, and the interest thereon. The evidence shows no payments by the plaintiff to W. H. Wroton on account of said lands.

On the 18th December, 1875, W. H. Wroton executed a mortgage of said lands to F. J. Pelzer, to secure a debt due by Wroton to Pelzer, Rodgers & Co. W. H. Wroton afterwards made an assignment for the benefit of his creditors, whereby Warren & Mitchell were made his assignees. In 1879, the mortgage executed was, in an action against the assignees of Wroton, foreclosed, and the premises were ordered to be sold by the sheriff of Barnwell County. Afterwards J. W. Lancaster, then being sheriff of said county, sold under said judgment of foreclosure the said premises, and the same were purchased at said sale by H. C. Rice, who complied with the terms of sale, and received a conveyance to said premises from said sheriff, bearing date the 10th day of November, 1879. On the 6th day of Feb-

ruary, 1884, the plaintiff made and delivered to H. C. Rice his promissory note in the sum of fifteen hundred and thirty-seven 62–100 dollars, payable the 1st January, 1885, with interest at the rate of ten per cent. per annum, the consideration of said note being the balance due by him to the said H. C. Rice on the purchase money of said land, and the amount due by him at that time to H. C. Rice and Mrs. H. J. Wroton, as copartners under the firm name of H. C. Rice & Co., on account of goods sold and delivered. On the 10th day of December, 1884, H. C. Rice conveyed his interest in said lands to Mrs. H. J. Wroton in settlement of certain partnership transactions between them, and delivered to her with said conveyance the promissory note of plaintiff above mentioned.

The plaintiff testifies that, being pressed for the payment of this indebtedness for the land, he applied to the firm of Pelzer, Rodgers & Co., who were then his factors, to take it up for him. That he saw F. J. Pelzer, of said firm, and he agreed to take up this indebtedness for him; that he explained to F. J. Pelzer fully his agreement respecting the purchase of said lands. That in 1885, his indebtedness to Mrs. H. J. Wroton for the land was arranged by Pelzer, Rodgers & Co., and afterwards he gave to Pelzer, Rodgers & Co. his promissory note for $1,158.77, being the balance then due by him on the note given to H. C. Rice, which had been delivered to Mrs. H. J. Wroton, and by her transferred to F. S. Rodgers for the benefit of Pelzer, Rodgers & Co., and that thereupon the H. C. Rice note was delivered up to him cancelled. F. S. Rodgers in his testimony attempts to deny these facts. His testimony, however, does not impress me; and F. J. Pelzer, who transacted the business for the firm with the plaintiff, was not examined. The plaintiff is corroborated by the accounts rendered and by the possession of the Rice note cancelled.

On the 16th January, 1885, Mrs. H. J. Wroton conveyed her interest in said lands to Francis S. Rodgers, to secure a debt due by the firm of Wroton & Co. to Pelzer, Rodgers & Co.; Francis S. Rodgers held this conveyance for the benefit of the firm of Pelzer, Rodgers & Co., of which firm he was a member. On the 6th of February, 1885, the plaintiff united with Francis

S. Rodgers in executing a contract whereby Rodgers agreed to lease the lands "known as the 'Tant Place,' and on which J. C. Tant now resides, for the term of one year," to the plaintiff for the sum of $200; and the plaintiff, in consideration of the use and occupation of said lands for said term, agreed to pay Rodgers said rental; and to secure same, Rodgers was to have a lien on the crops made on said place during the year 1885. This contract was not recorded. It was renewed by endorsement in writing for the years 1887 and 1888. Pelzer, Rodgers & Co. were the factors of the plaintiff from 1884 to 1888 inclusive, and advanced money and supplies to the plaintiff, and sold his cotton crops. In the accounts rendered by said firm to the plaintiff, he is charged on the 1st of November, 1885, with the note of $1,158.77.

On the 16th of April, 1890, plaintiff executed to defendant, S. D. M. Guess, an agricultural lease and lien to secure $250 rent of said lands for the year 1890. In the paper the plaintiff agrees "to take good care of the premises, and to deliver possession of same at the expiration of the lease without further notice." This lease and lien was filed and indexed in the office of the register of mesne conveyance for said county, on the 23d of April, 1890, and was paid by the plaintiff on the 29th of September, 1890.

On the 21st April, 1890, Francis S. Rodgers conveyed all the interest held by him in said premises to the said S. D. M. Guess, who now claims to be the *bona fide* purchaser for value of said premises, without notice of any legal rights or equities between the plaintiff and the defendant's grantors. The plaintiff during all these years paid the taxes on said premises. Sometimes the amount of taxes was advanced by Pelzer, Rodgers & Co., but were charged against plaintiff in his accounts with said firm. No moneys were paid to Francis S. Rodgers, or to Pelzer, Rodgers & Co., by the plaintiff as rents on the lease and lien executed to Francis S. Rodgers above mentioned. The plaintiff, as I gather from the affidavit of Francis S. Rodgers, made in the cause, and which he stated was correct while on the stand, owed the firm of Pelzer, Rodgers & Co. a balance on

account, for the year 1888, of one hundred and twenty-four 83–100 dollars.

After a careful study of all the testimony, both oral and documentary, I have no doubt but that all the parties who were engaged and took part in the various transfers and transactions concerning the lands in dispute, prior to the transfer to the defendant herein, were fully apprised of the tenure by which the plaintiff held said lands; and were fully informed of the nature of his rights and equities therein. Besides, it must not be lost sight of, that the plaintiff, during all these years, was in the open and notorious possession of these lands, occupying, using, improving, and claiming them as his own. Now, as to the defendant. He had been living in a short distance of these lands all his life, and knew that the plaintiff had for years been in the open, notorious, and continuous possession thereof. He knew that the plaintiff had, from time to time, during all these years, made permanent and valuable improvements on these lands. Under these circumstances, he testifies that he was offered these lands by Francis S. Rodgers; that he then declined to purchase until he could inspect them; that he visited the plaintiff, and that it was agreed between the plaintiff and himself that he should buy the land and rent it to the plaintiff for $250, the plaintiff to have the refusal of the place for the next year. That he had the lease prepared and returned the next day, when it was executed by the plaintiff, after being explained to him. The plaintiff testifies, as to this transaction, that the defendant came to his house, talked with him about the debt he owed on his land to Pelzer, Rodgers & Co.; said he wanted to help him; that Pelzer, Rodgers & Co. was going to sell his land, and that he would agree to take up his indebtedness until October, 1890, if plaintiff would pay him the sum of $250, and secure the same by a lien on his crops; that he did not want plaintiff's land; that notwithstanding he considered the proposition extortionate, he agreed to it; that during the conversation, he told defendant of his contract with reference to the land, and defendant assured him that he would convey the land to him at any time he wished to pay the money, as all he wanted was his money and interest; that on the 16th April, 1890, de-

fendant came again and brought a paper to be signed, and that he signed it, being assured by defendant that it was a lien as agreed on, to secure the interest on the money he had to pay out. The transfer of Francis S. Rodgers to the defendant took place five days after the lien was executed.

The testimony does not satisfy me that the defendant saw the contract for rent with Rodgers before he completed the purchase, and that he relied thereon in making the purchase. The plaintiff, after paying the two hundred and fifty dollars to the defendant, offered to pay him the amount which he had paid Francis S. Rodgers on account of the purchase money of said lands, and take up his papers. This offer was refused by the defendant. Afterwards the defendant commenced proceedings in the trial justice's court against the plaintiff, to eject him from said premises, which are fully set forth in the complaint. The present action was then instituted by the plaintiff.

The present action is in the nature of an action by a mortgagor against a mortgagee to redeem and enjoin the mortgagee from proceeding to eject the mortgagor from the possession of the mortgaged premises in the meantime. From the evidence, it appears that the contract respecting these lands, entered into between W. B. Dowling and the plaintiff, was by parol. This contract was afterwards recognized by Dowling when he wrote to plaintiff, authorizing him to take possession of the premises. Plaintiff took possession in pursuance of the agreement, paid part of the purchase money, and made valuable and permanent improvements thereon, and has continued in open and notorious possession ever since, claiming said lands as his own. This was sufficient part performance of the contract to take it out of the statute of frauds. *Mims* v. *Chandler*, 21 S. C., 480; *Humbert* v. *Brisbane*, 25 *Id.*, 510; *Martin* v. *Patterson*, 27 *Id.*, 621.

The plaintiff having entered into a valid contract with Dowling for the purchase of the land, he is to be treated in equity as the equitable owner of the land, while Dowling, his vendor, is to be treated as the owner of the money. In such case, the vendor is deemed in equity to stand seized of the land for the benefit of the purchaser, "and the trust attaches to the land, so as to bind the heir of the vendor, and every one claiming

under him as a purchaser, with notice of the trust." 2 Story Eq., 788, 789, 790 ; *Gregorie* v. *Bulow*, Rich. Eq. Cases, 245 ; *Walker & Trenholm* v. *Kee*, 16 S. C., 76 ; *Blackwell* v. *Ryan*, 21 *Id.*, 121.

While this relation existed between Dowling and the plaintiff, Dowling died testate, appointing by his last will and testament Jacob E. Free as his executor, with power to sell and convey lands in settlement of his estate. The evidence shows that, after the death of Dowling, Free, his executor, acknowledged the contract entered into by testator in his lifetime with the plaintiff respecting these lands, and received payments on account of the purchase money thereof; that the plaintiff, in order to close the transaction with Free, executor, procured W. H. Wroton, a friend, to pay the balance of the purchase money for him, and to take the title to said land from Free, executor, as security for the money advanced, Wroton at the same time agreeing to reconvey to plaintiff, within a certain time, on payment of the advances. This transaction extinguished the previous relation which had existed between Dowling and the plaintiff, and established between Wroton and the plaintiff the relation of mortgagee and mortgagor. It is not necessary to impress upon a transaction this relation, that the conveyance should be made by the debtor. The party making the advance, and taking the conveyance under these circumstances, is as much a mortgagee as if the land had been conveyed to him directly by the debtor. Jones Mort., § 331 ; *Carr* v. *Carr*, 52 N. Y., 251; *Stoddard* v. *Whiting*, 46 *Id.*, 632 ; *Murray* v. *Walker*, 31 *Id.*, 399.

The true criterion as to whether the transaction amounts to a mortgage is the continued existence of the debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt. Pom. Eq. Jur., § 1195; *Walling* v. *Aiken*, McMull. Eq., 1. This doctrine is applied under every variety of circumstances where the essential fact exists. "Whenever a deed absolute on its face is thus treated as a mortgage, the parties are clothed with all the rights, and subject to all the liabilities, and are entitled to all the remedies of ordinary mortgagors and mortgagees. The grantee may

61—37

maintain an action for the foreclosure of the grantor's equity of redemption, and the grantor may maintain an action to redeem and to compel a reconveyance upon his payment of the debt secured." Pom. Eq. Jur., § 1196. As was well said by Judge Allen in *Carr* v. *Carr, supra :* "The fact once established either by the terms of the conveyance or by other evidence, that the grant was intended as a mortgage, the rights of the parties are measured by the rules applicable to mortgagors and mortgagees ; and the conveyance remains a mortgage until the equity of redemption is foreclosed, and the mortgagee cannot have ejectment against the mortgagor, or those claiming under him, until after foreclosure." If the conveyance is once shown to be a mortgage, it will operate only as a mortgage, and it cannot be converted by any subsequent written agreement into an absolute conveyance, unless such subsequent agreement amounts to a sale of the equity of redemption fairly made upon sufficient consideration. *Brownlee* v. *Martin,* 21 S. C., 400 ; Jones Mort., § 340.

By reason of these transactions, Wroton had an interest in said lands to the extent of the money advanced by him ; while, at the same time, Tant had an interest in the lands resulting from the payments made by him on account of the purchase money, under his original contract with Dowling. Wroton held the legal title, with a lien upon the whole land to secure his advance. The interest of Wroton in the premises was capable of being mortgaged. For, as I understand the rule, every kind of interest which a person has in real estate may be mortgaged, if it be the subject of assignment and sale. Wroton, in the exercise of this power, did mortgage his interest in said lands to Francis J. Pelzer as security for a debt due and owing by Wroton to the firm of Pelzer, Rodgers & Co. This mortgage could not, and did not, cover the interest of the plaintiff in said lands. After this, Wroton makes an assignment to Warren & Mitchell of all his property, real and personal, for the benefit of his creditors. The mortgage executed to Francis J. Pelzer by Wroton, as aforesaid, is foreclosed by action in this court against the assignees of Wroton. The plaintiff, who is in the actual and open possession of the lands

described in said mortgage, is not made a party to the proceedings for foreclosure. Under a judgment of foreclosure and sale rendered in said action, the lands are sold by J. W. Lancaster, sheriff of Barnwell County, and are bid off by H. C. Rice, who complies with the terms of sale, and receives a conveyance from the sheriff.

Under this sale, Rice acquired the title of the parties to the action. That is all the court undertook to sell, and that is all the purchaser is entitled to have conveyed to him. The title of the mortgagee, and also the title of the mortgagor as it stood at the time the mortgage was made, was all that Rice, as purchaser, acquired. Jones Mort., § 1647. The plaintiff's equity of redemption was not cut off by said mortgage or barred by the judgment of foreclosure and sale thereunder. The conveyance to Wroton, as has already been seen, was a mortgage, and the right of redemption is an inseparable incident, and cannot be restrained or barred except by the regular methods prescribed by law. If the transaction between the original parties make it a redeemable estate, the right of redemption will continue until foreclosure. "For the maxim of equity is, that an estate cannot be a mortgage at one time, and an absolute estate at another. This is an elementary rule on this subject, and the object of it is to prevent imposition and fraud upon the mortgagor." *Henry* v. *Davis*, 7 John. Ch., 42. The right of redemption is a favored right in equity.

Rice having obtained a conveyance under said sale from the sheriff, recognizes the equitable rights of the plaintiff in said lands, and takes from him a promissory note for the balance due him on account of the purchase money and for other sums due by plaintiff to the mercantile firm of which Rice was a member ; and afterwards, in a settlement with his copartner, Mrs. H. J. Wroton, Rice turns over said promissory note to her, and executes to her at the same time a conveyance of all his interest in the said lands. Mrs. Wroton being indebted to Pelzer, Rodgers & Co., turns over the plaintiff's said note to Francis S. Rodgers, a member of said firm, and executes to him for the benefit of said firm a conveyance of said lands. Francis S. Rodgers afterwards conveys said lands to the defendant.

Throughout all these transfers the plaintiff was in the actual possession of said lands, using, improving, and claiming them as his own.

It is settled law in this State, that where one purchases land of which a person other than the vendor is in possession, such possession is notice to him that the party in possession may have some claim which he had better inquire into and ascertain ; although such possession as matter of fact is unknown at the time of such purchase. *Sheorn* v. *Robinson*, 22 S. C., 32; *Lake* v. *Shumate*, 20 *Id.*, 31; *Biemann* v. *White*, 23 *Id.*, 490; *Graham* v. *Nesmith*, 24 *Id.*, 285; *Sweatman* v. *Edmunds*, 28 *Id.*, 58. In *Sweatman* v. *Edmunds, supra,* Mr. Justice McGowan says: "As the record of a prior deed is notice whether it is actually known or not, so possession, whether known or not, is sufficient notice." And in *Graham* v. *Nesmith*, Mr. Justice Mc-Iver says: "It is well settled that possession is notice sufficient to put a party on inquiry, and that is enough."

The plaintiff being in possession, and these several grantees having constructive notice of that fact at the times they, respectively, accepted conveyances of said lands, it was their duty to inquire by what right the plaintiff claimed to hold said lands, and such inquiry would have led to a notice of the equity which the plaintiff is now seeking to set up and enforce. If Francis J. Pelzer, at the time he took the mortgage from Wroton, and the several grantees at the times they accepted conveyances, did not know of plaintiff's possession, or, if knowing of his possession, failed to inquire into that possession, no fault can be attributed to the plaintiff, and no advantage derived by them from their want of knowledge of his equities. But outside of the constructive notice derived from possession, there is evidence tending to prove actual notice to all the parties who took conveyances of these lands, of the nature of the plaintiff's possession and of the equities he is now setting up. And this evidence is greatly strengthened by the conduct and dealing of the several parties with the plaintiff respecting said lands. The equity of redemption of the plaintiff clung to the title of Wroton, and to that of his assigns. Every one taking a mortgage or conveyance from or

under him, took subject to the plaintiff's rights and equities. The relation of mortgagor and mortgagee continued to exist notwithstanding the various changes in the legal title. While the parties changed, against whom the plaintiff could enforce his rights, the original contract remains unchanged in character. As long, then, as the relation of mortgagor and mortgagee exists, the right to redeem cannot be cut off without foreclosure and sale in a court of equity. "Under the principle once a mortgage always a mortgage, the transaction retains that character until it is foreclosed or redeemed." Jones Mort., § 334.

But it is contended that the plaintiff attorned to both Francis S. Rodgers and the defendants, and that by these acts he is now estopped from denying the title of the defendant; that by the acceptance of a lease of the said lands from the defendant, he acknowledged the title of the defendant, and thereby barred his right to redeem. I will first consider the lease executed by the plaintiff to Francis S. Rodgers. In doing so, the fact, that at the time the parties stood in the relation of mortgagor and mortgagee, must not be lost sight of, neither must the further fact, that "the law looks with jealousy and suspicion upon all dealings between the mortgagor and mortgagee, from the supposed influence which the former has over the latter." What are the facts? As late as 1885, and after the execution of the paper purporting to be a lease and lien, the plaintiff builds a dwelling house on said lands at a cost of about $600. Rodgers stands by and permits him to do so. The rents reserved were never charged against the plaintiff in his accounts with Pelzer, Rodgers & Co., and were never demanded of, or paid by, plaintiff. The taxes on said lands were paid by plaintiff, although not required of him by the terms of the lease. This action on the part of the plaintiff was wholly inconsistent with that of a tenant. The plaintiff was a poor man at the time he entered into the possession of these lands under the contract with Dowling to purchase, and for years had been struggling to improve them, and acquire a home for his family. Is it, then, reasonable to presume that he would, if he knew, or even believed, the lands had passed into the hands of an-

other, and he was holding only as the tenant of such person, have expended a large amount of money in permanent improvements upon said lands? I cannot believe it. It would be contrary to reason and common sense.

Effect must be given to the instrument according to the intent of the parties. Courts of Equity will always look through the forms of a transaction, and give effect to it so as to carry out the substantial intent of the parties. The intent of the parties in entering into this contract, I am persuaded, was not to change the relation, then existing between the parties of mortgagor and mortgagee, to that of landlord and tenant, and cut off the plaintiff's right to redeem, even admitting that this end could be attained by such agreement, of which we will have more to say further on. The conduct of the parties, and their after-dealings with each other, satisfy me that the object of this paper was to secure to the firm of Pelzer, Rodgers & Co. the cotton crops made by the plaintiff on said lands, in order that the proceeds arising from the sales thereof might be applied to the indebtedness of the plaintiff to said firm; and that not only Rodgers, who, in this matter, was acting for the firm of Pelzer, Rodgers & Co., but the other members of said firm, were fully advised of the character of plaintiff's possession, and of the equities upon which he was relying in making said improvements, and in performing other acts in regard to said lands.

Now, as to the lease by the defendant to the plaintiff. From what has already been said, the conclusion follows, that when Rodgers conveyed said lands to the defendant, the relation of mortgagor and mortgagee was established between the plaintiff and the defendant. Now, in case of an ordinary mortgage of real estate, such relation cannot be destroyed by the mortgagor accepting a lease of the mortgaged premises from the mortgagee. Such acknowledgment of title in the mortgagee would not pass the estate, nor deprive and debar the mortgagor of his right to redeem. This right continues until it is barred by foreclosure and sale, or redeemed. "A mortgage being given as security for a debt, the general rule is, that no more change in the mode and time of payment, nothing short of the actual

*payment of the debt,* or an express release, will operate as a discharge of the mortgage.'' 1 Hill. Mort., 476.

Judge Wardlaw, in *Mitchell* v. *Bogan,* 11 Rich., 704, in speaking of the act of 1791 (now section 2299, Gen. Stat.), says: "There can be under the act no redemption before sale for satisfaction, for no estate to be redeemed has passed from the mortgagor, or those who hold under him, until a sale which bars the title. What is generally called the equity of redemption is a legal *right* in the owner of the land to disencumber it. * * * There can be no simple foreclosure; for if all right to disencumber was taken away, and nothing more done, there would still be no estate in the mortgagee. The release of the equity of redemption is a *conveyance* of the land to him who has the encumbrance." *Simons* v. *Bryce,* 10 S. C., 373.

In what, then, does the present case in this respect differ from that of an ordinary mortgage of real estate? The principle must be the same, although the relation is established in a different way and manner. A mortgage acquired under the circumstances here presented, clothes the parties with all the rights, and subjects them to all the liabilities, and entitles them to all the remedies of ordinary mortgagors and mortgagees. This being so, it must follow that where the relation of mortgagor and mortgagee is once established, no matter what the circumstances may be, this relation cannot be changed, and the mortgagor's right to redeem lost and defeated by an attornment of the mortgagor to the mortgagee. The defendant only holds in form the legal title—a title acquired in the first instance by the act and assent of the plaintiff, and as a security for his debt, and which came down to the defendant from Wroton subject to the plaintiff's right to redeem. Under the relation existing between the plaintiff and the defendant, the defendant is in no better position to disregard the equities of the plaintiff than a mortgagee who holds the absolute title in form, but in substance, as the mere security for a debt. The defendant has no other rights or remedies than the law accords to mortgagees. Now it cannot be maintained that the lease made by the plaintiff to the defendant was a *conveyance* of the land to him who had the encumbrance.

This attornment, I am satisfied, did not discharge the mortgage, neither did it defeat the plaintiff's right to redeem. The way to dissolve the relation of mortgager and mortgagee is well settled, and that is to call upon the mortgagor to redeem, or be foreclosed. Chancellor Johnson, in *Walling* v. *Aiken, supra,* says: "The right of a mortgagor to redeem is an equity. So that it cannot be provided against by agreement that Chancery will not give relief; nor can the right of redemption be closed by any agreement, since this would be to let in all manner of extortion and fraud."

I might stop here, but the question has been raised that said lease was not fairly obtained. Without reviewing the testimony here, I am compelled to say the evidence satisfies me that said lease was unfairly obtained. I am sure the plaintiff was misled by the defendant as to the object of the paper, and that he executed it under the belief that he was not compromising any of his rights and equities in regard to the said lands, but, on the contrary, with the belief that he was saving those rights, and securing a home for himself and family. Acceptance of a lease induced by fraud, mistake, misapprehension of the facts as to the state of the title, or by duress, or other improper means used by the lessor, works no estoppel. *Givens* v. *Mullinax,* 4 Rich., 590; *Camp* v. *Camp,* 13 Am. Dec., and note of Mr. Freeman; *Hall* v. *Benner,* 21 Am. Dec., 401. In *Hall* v. *Benner,* the court says: "There is a wide difference between the case of a lease from a person having title or possession, and that of a lease from one having no title, no possession, or no right to possession, as to the conclusiveness of the evidence. In the former case, generally speaking, the tenant would be estopped from disputing his landlord's title, unless fraud, mistake, or imposition be clearly proved. In the latter case, the lessee would not be concluded by the lease, because the obtaining a lease under such circumstances would generally be considered unfairly obtained."

Here the defendant, at the time he procured said lease, had no title to the lands, no possession, and no right to possession. The defendant is concluded now from averring a different state of things from that which by his words and conduct he caused

the plaintiff to believe, and induced him to act upon, in the transactions between them concerning this land. Jones on Mort., sec. 600. The fact that plaintiff afterwards paid the $250, tends rather to show his understanding of the agreement than an acknowledgment of it as a valid lease. The plaintiff had agreed to pay the defendant $250, in consideration of the defendant's advancing sufficient money to take up plaintiff's indebtedness to Pelzer, Rodgers & Co. He felt bound to the defendant for this sum, and was willing to pay it. It must also be remembered that the plaintiff was not only ready and willing, but offered to pay the amount advanced by the defendant, and redeem his land, which offer was refused by the defendant. The relief now demanded is the redemption by the mortgagor of the premises from the mortgage, consequently the rules governing cases of specific performance have no application. When the relation is that of mortgagor and mortgagee, the right to redeem cannot be cut off without foreclosure and sale.

But one other question now remains, namely, What amount is now due by the plaintiff to the defendant on account of the purchase money of said lands, and which must be paid by the plaintiff before he can redeem? Taking the testimony on this point, it would seem that there is but very little of the purchase money remaining unpaid. On the 6th of February, 1884, when plaintiff made and delivered his promissory note to H. C. Rice for $1,537.62, there was something less than that amount remaining due on the land, as the evidence shows that said note included an amount due by the plaintiff to the firm of which Rice was a member. This note went into the hands of Pelzer, Rodgers & Co. On the 1st day of November, 1885, there was remaining due on said note $1,158.77. On this day a new note was given by the plaintiff to Pelzer, Rodgers & Co. for the last mentioned sum, and the plaintiff was charged with this note on his general account with said firm. Plaintiff, after this, shipped his cotton crop of each year up to 1889 to Pelzer, Rodgers & Co., and the same was sold by said firm and the proceeds applied by them to his account with said firm. There is no evidence that the said note was ever taken out of the account, while the accounts of each year, produced after 1885, in-

dicate that this amount was included. On the 20th January, 1888, the accounts show there was remaining due on the account of the plaintiff with said firm only the sum of $254.20. No note of the plaintiff to Pelzer, Rodgers & Co., or to Francis S. Rodgers, who acted in the matter of these lands for the firm, was produced or offered in evidence.

But, as we have seen, the plaintiff was owing the firm of Pelzer, Rodgers & Co., at the close of this business connection, for advances and supplies during the year 1888, a balance of $124.83. Coming as he does to redeem, this sum must be paid in addition to the balance due on the mortgage debt. From the evidence before me, I must conclude that there is only due and remaining unpaid of the purchase money of said land the sum of two hundred and fifty-four 20-100 dollars, with interest thereon from the 20th day of January, 1888. "A purchaser who has knowledge that his grantor, though holding the estate by absolute conveyance, nevertheless is, in fact, only a mortgagee, acquires a defeasible estate only, and it is defeasible upon the same terms as it was in the hands of the original grantee." Jones Mort., § 339. The defendant, as we have seen, had this notiee. He cannot occupy the position of a *bona fide* purchaser for valuable consideration without notice. Having purchased with notice of the plaintiff's equity and without warranty, he must bear the consequences of his own imprudence and folly.

It is, therefore, ordered, adjudged, and decreed, that the defendant, upon the payment to him of the sum of two hundred and fifty-four dollars and twenty cents, with interest thereon from the 20th day of January, 1888, as also the further sum of one hundred and twenty four 83-100 dollars, with interest thereon from the first day of January, 1889 (being the balance due by the plaintiff to Pelzer, Rodgers & Co. at the last mentioned date on his account for advances and supplies during the year 1888, and which was paid by the defendant to said firm in the transfer of said lands), do execute to the plaintiff a conveyance of all the right, title, and interest now held by him in and to the tract or parcel of land described in the complaint, and known as the "Tant Place," and on which the plaintiff

now resides with his family, and that he do at the same time deliver to the plaintiff all deeds of conveyance and other papers in his possession relating to said lands. Further ordered, that the costs of this action, including stenographer's fees for testimony furnished the court, be paid by the defendant.

The defendant appealed on the following exceptions:

I. That his honor, the presiding judge, erred, as it is respectfully submitted, in holding that the relation of mortgagor and mortgagee existed between the plaintiff and the defendant, and that such relation could only be dissolved by a conveyance or foreclosure and sale of the land in dispute, as in the case of a legal mortgage.

II. That his honor erred, as it is respectfully submitted, in holding that the plaintiff's possession of the land was notice to the defendant of all his equities, although the proof shows that the defendant did inquire of the plaintiff concerning his rights, and was informed thereof as now set up.

III. That his honor erred, as it is respectfully submitted, in holding that the possession of the plaintiff was notice to subsequent purchasers that he was simply a mortgagor, when the plaintiff had executed a deed under seal, whereby he declared himself the tenant of the party holding the legal title.

IV. That his honor erred, as it is respectfully submitted, in holding that the lease from F. S. Rodgers to plaintiff, was designed merely to secure the delivery of the crops of plaintiff to the firm of Pelzer, Rodgers & Co., to be applied to the debt due by plaintiff to the said firm, whereas, not only was there no evidence to sustain such finding, but the evidence is opposed thereto; and the finding, in effect, overrules a written contract, not only without evidence, but against the evidence.

V. That his honor erred, as it is respectfully submitted, in holding that the lease from the defendant to the plaintiff was unfairly obtained, when the clear preponderance of the evidence is opposed to such finding, and especially so when upon the trial of the case his honor stopped the defendant from introducing further testimony upon this point, indicating thereby that the fact was sufficiently established.

VI. That his honor erred, as it is respectfully submitted, in finding that the amount due by plaintiff to defendant is only $379.03, when the plaintiff had in his possession the accounts current relied on at the time upon which this finding is based, and at the same time was informed that the defendant was going to buy the interest of F. S. Rodgers in the land for $2,000, and according to his own testimony, treated with the defendant upon the basis of a claim for $2,000, and withheld from defendant the information that the true amount he claimed to be due was less.

VII. That his honor should have found, as it is respectfully submitted, that the legal title to the land in dispute, having never been in the plaintiff, he had no such interest in the land as required a conveyance from him, or a foreclosure and sale to divest the same, and that under the most favorable view of the testimony for him, he held only an equity to have a conveyance made to him upon the payment of the purchase money, which equity he could surrender in various ways, and did effectually surrender when he accepted leases from F. S. Rodgers and the defendant, respectively.

When the case was called for a hearing in the Supreme Court, the defendant, appellant, presented a petition, asking this court, "that in the event of this honorable court reaching the conclusion that the decree of the Circuit Judge upon the law of the case must be affirmed, and upon the facts that the evidence before him sustains his finding, that the amount due upon the bill is only       dollars, as appears by the garbled statements of the accounts of Pelzer, Rodgers & Co., introduced in evidence by the plaintiff, then that the case be remanded to the Circuit Court, to allow the full, complete, and true statements of the accounts of Pelzer, Rodgers & Co. to be introduced in evidence, and the true amount due upon the debt being thus established, justice may be done in the premises." To this petition printed copies of this account, from 1880 to 1889, inclusive, were appended.

*Mr. Robert Aldrich*, for appellant.

*Messrs. L. T. Izlar* and *S. G. Mayfield,* contra.

November 17, 1892.  The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.  The facts of this case are so fully and so clearly stated in the Circuit decree of his honor, Judge Izlar, and his conclusions, both of law and fact, are so satisfactorily vindicated by the reasoning which he employs and the authorities which he cites, that we may well adopt his decree as the opinion of this court, in conformity to a practice quite common in the former Court of Equity in its palmiest days.  In deference, however, to the zeal, earnestness, and ability with which this appeal has been pressed, without undertaking to make any statement of the facts, or going into a discussion of the legal principles, which would involve a mere repetition of what has been so well said in the Circuit decree, which will be incorporated in the report of this case, we propose to consider the points in which it has been assailed by the grounds of appeal, which should likewise be incorporated in the report of the case.  These grounds have been condensed, in appellant's argument here, into three points: 1st. That his honor erred in holding that the equity of the plaintiff could only be parted with by a conveyance or a foreclosure and sale, whereas, he should have held that such equity could have been, and was, waived by the giving of the leases to Rodgers and the lease to the defendant.  2d. That there was error in holding that defendant had notice of the equity of plaintiff by reason of his possession, when that possession was explained by the leases executed by plaintiff to Rodgers.  3d. That there was error in holding that the lease from defendant to the plaintiff was unfairly obtained, when the defendant was cut off by his honor from introducing further testimony as to this point, thereby indicating that the defendant had sufficiently established the contrary.

It will be observed that all of these points turn upon the effect which should have been given to the leases.  In view of the well settled principle, that even where the mortgagor has conveyed to the mortgagee the equity of redemp-

tion, the transaction is to be carefully scrutinized, inasmuch as the law looks with jealousy upon such dealings, in order to see whether the creditor has taken advantage of the influence which his relation to the debtor gives him, it seems to us clear that the Circuit Judge committed no error in the view which he took of these so-called leases. See *Webb* v. *Rorke*, 2 Sch. & Lef., 661; *Holridge* v. *Gillespie*, 2 Johns. Ch., 30; *Russell* v. *Southard*, 12 How., 139; *Villa* v. *Rodriguez*, 12 Wall., 323. As to the leases to Rodgers, it is very obvious from the testimony that they were not designed to be what they purported to be; for, although extending over a period of several years, the rent purported to be reserved was never paid, or even demanded, and was not charged in the accounts of Pelzer, Rodgers & Co. against the plaintiff, and during all that period the taxes on the land were paid by the plaintiff, generally through Pelzer, Rodgers & Co., and charged in their accounts against the plaintiff, although there was no provision in the leases obligating the plaintiff to pay such taxes. And when to this is added the fact that the plaintiff was making expensive and permanent improvements upon the premises, it is impossible to resist the conclusion that the Circuit Judge took a proper view of the matter.

As to the alleged lease to the defendant, that was taken before the defendant had acquired the legal title; and when to this is added that the Circuit Judge found as a fact that such lease was unfairly obtained, it is quite obvious that there was no error here. It is true, that this finding of fact has been vigorously assailed in the argument; but as the testimony upon this point is conflicting, we must, under the well-settled rule, sustain the finding of the Circuit Judge; for, as has been said in several cases, where the testimony is conflicting, this court will rarely, if ever, disturb the finding below. Here there was a direct conflict in the testimony, and we must say that there is much in the surrounding circumstances to sustain the conclusion reached by the Circuit Judge.

But it is urged that when the defendant offered to introduce further testimony upon this point, he was stopped, whereby the defendant was misled into the belief that the Circuit

Judge was satisfied that the view contended for by defendant had been sufficiently established. We do not find any evidence of this in the stenographic notes of the trial, but we do find in the general statement made in the commencement of the "Case," that after the defendant had introduced several witnesses, who testified in substance that the plaintiff, during the year 1890, had acknowledged to them, or stated in their hearing, that the defendant had bought his land, and that he had rented it from him for $250, and that Guess had promised to give him the refusal of it as long as he wanted it, &c., this statement is made: "The defendant had other witnesses in attendance to prove the same or similar acknowledgments or confessions upon the part of plaintiff, and upon calling one of them, the presiding judge informed defendant's attorney that he need not introduce further proof on that point." Accepting this statement as a correct version of what occurred, we do not see how it can have the effect claimed for it by the appellant. There was no doubt of the fact that the plaintiff had given to the defendant a paper purporting to be an obligation to pay $250 for the rent of the premises for the year 1890, for that was conclusively proved by the terms of the paper itself introduced, and was not denied by the plaintiff; and, therefore, the additional witnesses proposed to be examined by defendant could not have added anything to the conclusiveness of the proof upon that point. But the important matter was, what occurred when that paper was signed, and as to this we do not understand that it was proposed to examine the additional witnesses.

Finally, it is urged that the Circuit Judge erred in ascertaining the amount due by the plaintiff. Taking the testimony introduced at the trial, upon which alone must the case be considered, we do not see how it would have been possible for the judge to have reached any other conclusion than that which he did reach. If the defendant had, or ought to have had, other testimony showing the amount to be larger, it was incumbent upon him to produce it, for he was distinctly advised by the prayer of the complaint, that he would "be required to establish the amount due on his debt, assigned as aforesaid by and from F. S. Rodgers." He knew,

or ought to have known, that the amount of the debt due by plaintiff could have been ascertained from, and proved by, the books of Pelzer, Rodgers & Co., and if he failed to procure and introduce such evidence, which was manifestly within his reach, at the trial, he must take the consequences of his own neglect, or, perhaps, his over-confidence in his other defence. Even if the plaintiff, under the mistaken belief that the debt amounted to twenty-five hundred dollars, authorized his attorney to offer the defendant that amount, which offer was refused, that could not operate as a conclusive admission that the debt amounted to that sum. One of the objects of this action, plainly expressed in the complaint, was to require the defendant to establish the amount of his debt, and when the defendant, in his answer, expressly denied that plaintiff owed him anything, and really based his defense upon that ground, he cannot, with a very good grace, now claim that he was misled into the belief that plaintiff admitted his indebtedness to be as much as twenty-five hundred dollars.

It only remains to consider the petition filed by the defendant since this appeal was perfected. This petition is addressed to this court, and cannot be regarded in any other light than as either an attempt to renew, in a different form, the application made to this court at a previous term [1] to suspend this appeal with a view to enable the defendant to move for a new trial in the court below, upon the ground of after-discovered evidence, or as a petition for a rehearing. Regarded in either light, we do not see how it can avail the defendant. If considered as an attempt to renew the effort made at a former term, then the doctrine of *res adjudicata* is conclusive. If as a petition for rehearing in the court below, it should properly have been made to that court before it lost its jurisdiction by this appeal. But if the purpose was to ask this court to consider facts not presented to the Circuit Court, as would seem to be the case from the circumstance that we find appended to the petition copies of plaintiff's account current with Pelzer, Rodgers & Co., which appellant claims would show

1 See 35 S. C., 605.

that there was error as to the amount found due, then it is clear beyond dispute that we cannot consider such facts.   For, as is said by Taney, C. J., in *Russell* v. *Southard*, 12 How., at page 159 : "According to the practice of the Court of Chancery from its earliest history to the present time, no paper not before the court below can be read on the hearing of an appeal."   This court has, in numerous cases, recognized and affirmed this doctrine.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.