8327

LELAND v. MORRISON.

1. EVIDENCE—JUDGMENTS.—If incompetent evidence be admitted in an equity case it is reasonable to suppose the Judge in making up his findings did not consider it.

2. IBID.—DEED—MORTGAGE.—PAROL evidence is admissible to show a deed absolute on its face was intended as a mortgage and the findings to that effect on Circuit are affirmed.

3. MORTGAGES—LACHES.—When it is once shown that a deed was intended as a mortgage it is treated as a mortgage from its date

until it is barred by the statute, and no act of the parties by laches or otherwise within such time will change the nature of the instrument.

4. FRAUD.—While the Court will not aid a party in enforcing an agreement by way of secret trust to secrete his property from his creditors, the Court affirms the findings below that this mortgage was not executed for that purpose.

Before GAGE, J., Charleston, September, 1911. Affirmed.

Action by H. G. Leland against J. B. Morrison. The Circuit decree is:

"The object of the action is to declare an instrument of writing to be a mortgage, which on its face appears to be a deed absolute. The action was begun January, 1911.

"The defendant married the plaintiff's sister and thus there is added to the issue an element of delicacy and difficulty.

"A history of the transaction is this: in December, 1890, the plaintiff bought from one Sanders about 2,000 acres of land near McClellanville and known as the 'Doe Hall' plantation. The price agreed to be paid was $6,000, but the plaintiff paid down only $1,200 and made a mortgage for the balance of $4,800. Of the cash payment one-half thereof was borrowed from one Walker. On 2 February, 1892, the plaintiff agreed with the defendant to sell him a one-half interest in the land. The agreement was reduced to writing and it recites that the balance of $4,800 was due and payable in four equal annual installments of $1,200 each, payable 1 January, 1892, 1 January, 1893, 1 January, 1894, and 1 January, 1895.

"The agreement further recites that of the $1,200 which fell due 1 January, 1892, the defendant had paid $600 and he agreed to pay $600 each year thereafter.

"The agreement further provided that, in the event either party to it should fail to meet his own annual payments of

$600, then the other party might meet it and hold the interest of that party as security for its return.

"The 6 January, 1893, the plaintiff executed to the defendant a mortgage on the said plantation to secure a debt expressed to be $2,200.

"The 24 October, 1894, the plaintiff executed to the defendant an absolute deed to the said plantation. The consideration expressed in the deed was $3,000.

"The deed recites that there was then due on the purchase money mortgage to Sanders, the sum of $1,800 and interest.

"The same day the deed was made the defendant addressed to the plaintiff a letter which is the basis of this action.

"That letter declares that upon the payment by Leland to Morrison on or before 1 December, 1896, of one-half of all such amounts as Morrison may have paid or may thereafter pay on the purchase price of the said plantation, with interest on such payments at the rate of 7 per cent., then Morrison would convey to Leland a one-half interest in the plantation.

"This letter and the deed are in the handwriting of the Hon. Henry A. M. Smith.

"The 3 January, 1894, Leland and Morrison leased the plantation to one C. Henry Leland for turpentine uses, and they were to receive therefor $140.

"The 11 March, 1895, Morrison leased to H. G. Leland the same premises for the same uses and for the same price.

"The 29 January, 1896, Morrison leased to H. G. Leland the same premises for turpentine uses and for cultivation in agriculture for the price of $140 for the turpentine and for 800 pounds lint cotton for farm cultivation.

"The 16 December, 1896, Morrison addressed to Leland a letter and therein made a statement of the account betwixt them.

"The plaintiff largely rests his case on the terms of this letter.

"Therein Morrison charges Leland with one-half the principal of the purchase price and interest thereon, and credits him with those sums received by him from Leland in 1893, 1894, 1895 and 1896 under the aforesaid lease.

"The general statement of the account is thus:

To sums paid by Morrison on price and taxes.... $2,816 00
To balance due Sanders on price.............. 1,008 00

                                  $3,824 00
By cash paid by Leland..................... 741 00

To balance due by Leland to Morrison......... $3,083 00

"In the letter Morrison wrote that Leland would owe him that much 'should we go back to the agreement of 1892,' which agreement was expressed in the Smith letter.

"In the letter Morrison also wrote 'will it be possible for you to sell your half for over $3,000 and save anything for yourself. Let me hear from you at once.'

"The record does not disclose a written answer to this letter of 16 December, 1896.

"Mr. Morrison took exclusive possession of the plantation in 1897 and has made valuable improvements upon it. He has erected thereon a mansion house worth $3,000 or $4,000. He has felled trees, drained the land and brought it into cultivation. At the outstart there was only about 100 acres of arable land, now there are some 225 acres open to cultivation.

"Mr. Morrison has underdrained the land at a cost of $1,000 and he has fenced it and built tenant houses and barns. He has cut 3,000,000 feet of timber worth $3,000.

"It is conceded that in 1890 the premises were barely worth $6,000, if as much as that.

"As a part of the history of the country it is known that lands throughout the whole State began to rise in value about 1900 and since then have steadily appreciated.

"Now the plaintiff fixes the value of Doe Hall at $20,000, the defendant fixes the value at not less than $10,000.

"I have no doubt but that fact in a measure accounts for this controversy, both the demand and the refusal of the demand.

"The parties submitted their differences to a friendly board of arbitrators; but its conclusion is not set up as a bar and throws no light on the issues now made.

"The plaintiff concedes that one-half the land belongs to the defendant; that his one-half is liable to contribute a moiety of the purchase price of $6,000 and that the defendant is entitled to have the improvements he has made on the premises, but that the defendant is chargeable with the timber he gathered from the premises and for the rents which he received in excess of his share.

"The issue of fact which lies at the threshold of the controversy is the meaning of the Smith letter. The defendant's contention is that this letter amounted only to an option extended by Morrison to Leland, to buy a one-half interest in the premises at any time before 1 December, 1896.

"The plaintiff's contention is that it was more than that; and was a declaration in effect, which modified the title, made at the same sitting and absolute on its face.

"If the Smith letter is considered in connection with the fact that Leland was the owner at outstart; that he first made a contract to let Morrison have a one-half interest; that he thereafter mortgaged the land to Morrison to save him from loss; that the last payment to Sanders was due 1 January, 1895; that after 1 December, 1896, and on 16 December, 1896, Morrison acknowledged in writing that Leland was the owner of one-half; then the conclusion is irresistible that the two men were tenants in common each of a half. The fact is fixed not altogether, it is true, but in large measure by the writings of the defendant and there is no escape from that conclusion.

"Beyond question on 16 December, 1896, by the defendant's own confession in the letter of that date Leland had then the full right to pay $3,083 and accept a deed for a one-half interest in the land. That was 16 days after the expiration of the alleged option. It is true that defandant now denies that Leland had this right of redemption (Tes., p. 57), but the letter fixes the fact against the present denial and the present denial gives pregnant meaning to the letter.

"If the defendant had the right on that day, when and how did he lose it?

"Rights are reciprocal. The defendant then had the righ to sell Leland's one-half and have the proceeds applied to the payment of his half of the Sanders debt and have the plaintiff's equity barred.

"The defendant had the right for twenty years thereafter; the lapse of that time alone would have defeated the right.

"The plaintiff had the corresponding right to wait fourteen years thereafter to enforce his right. The long lapse of time, to wit: fourteen years, operates only to throw a doubt over the fact of plaintiff's contention, but the proper evidence dissolves the doubt.

"The defendant objected to the parol testimony of the plaintiff which tends to prove that the deed was not intended to be absolute.

"I think the testimony was competent. It does not vary the terms of the written instrument, but it tends to well explain and confirm the evidence of all the writings together, that the parties intended that Leland should be half owner of the plantation. *Shute* v. *Shute,* 82 S. C., 264.

"The defendant relies upon a verbal and strict construction of the letter of December 16, 1896, to show that Morrison was not fully-minded to go back to the contract of 1892 and that at best he proposed a case for Leland's action on the hypothesis that they did go back to the contract of 1892.

"But the letter in its entirety—all of it—proves that Morrison was there mindful of Leland's right to pay up

and take legal title. And this view is strengthened when the history of the transaction from first to last is recalled.

"There is no room to apply the defense of estoppel to the plaintiff.

"And I do not understand that such a defense is seriously, if at all, made. But if it is the testimony does not sustain it. Leland had no knowledge that Morrison did not have. Morrison had done no act, at Leland's suggestion or acquiescence, which will work injury to him. Morrison has not been misled; if anybody has been injured by the transaction it is Leland.

"The improvements made by Morrison were made on his own land, and of right.

"Now, am I able to sustain the plea of *laches*. That doctrine is applied to prevent the commission of a wrong.

"The plaintiff's long delay in prosecuting his right may in a measure be explained.

"Some men are slow at any time to take action. They procrastinate, and months lengthen into years, and years into decades.

"And the parties are akin, and either of them might well abhor a resort to the Courts of the country to settle their differences.

"At the outstart the land was of small value, timber growing upon it was not then exploited, the rise in value was gradual and constant, so that a          grew to be an estate.

"But above all things no harm can come to Morrison by granting the relief sought; he cannot lose a cent. He testified that the improvements, which cost him some $5,000 are on such part of the whole as may be set aside to him when partition be had. He is entitled to have that remedy to protect him from loss.

"He is furthermore entitled to have Leland's half interest first subjected to the payment of all sums which Morrison has paid, and which Leland ought to have paid.

"When that has been done, if there yet be a surplus, then Leland is entitled to it. It seems to me that this is complete equity:

"Finally, the defendant contends that in the making of the mortgage and the deed by Leland to Morrison there was present in Leland's mind a fraudulent intent to circumvent his creditors and sequester his property from their reach.

"If that be so then Leland is not entitled, as matter of course, to the remedy he now seeks.

"But the testimony does not merely establish so grave an issue There is no proof that Leland is now insolvent or that his creditors have not been paid, or that they were hindered, or that he has the intent which moves men to deceive.

"He was embarrassed. He did prefer Morrison and the preference was accepted; and so far as the evidence shows the preference was lawful.

"I think all the issues have been thus passed upon; and I conclude that the prayer of the complaint must be allowed.

"I shall not undertake to formulate a technical order for relief, but shall remand the case to the master to take an account of what may be due by Leland on the purchase price of the plantation; to ascertain what Leland is chargeable with while he was in possession; to ascertain what Morrison is chargeable with while he was in possession; to ascertain the value of the timber cut by Morrision and if he is liable therefor, or for any part of it; to ascertain what rents Morrison got and if he is liable to Leland for any part thereof. It is so ordered."

Defendant appeals.

*Mr. Wm. Henry Parker,* for appellant, cites: *Parol evidence is not admissible to vary a contemporaneous writing:* 4 Wig. Ev., sec. 2437; 21 S. C. 399; 28 S. C. 371; 37 S. C. 498. *The Smith letter does not establish a mortgage:* 61

S. C. 579; 52 S. C. 59. *Taking a mortgage shows the first paper was a deed:* 41 S. C. 171; 3 Rich. 153; 54 S. C. 191; 55 S. C. 511. *No continuing debt—no mortgage:* 31 S. C 281. *When deed adsolute may be held a mortgage:* 1 Des. 340; 88 S. C. 318; 3 Rich. Eq. 153; 31 S. C. 276; 41 S. C. 168; 52 S. C. 54; 54 S. C. 184; 55 S. C. 51; 61 S. C. 579; 64 S. C. 177; 66 S. C. 85; 82 S. C. 555. *Court will not act on stale claims:* 3 Pom. Eq. Jur. 671; 31 S. C. 278; 41 S. C. 170; 10 N. W. 115; 24 L. R. A. (N. S.) 840; 125 Mass. 494; Jones on Mtgs., sec. 330; 97 Ill. 56; 65 N. E. 650; 58 N. E. 1053; 77 Am. Dec. 658; 95 U. S. 422; 27 S. C. 226. *An agreement to sequestrate property will not be aided:* 1 Pom. Eq. Jur., sec. 401; 3 Rich. Eq. 154.

*Messrs. W. A. Holman & R. C. Holman,* contra. *Mr. W. A. Holman* cites: *Declaration of one as to his interest is competent:* 48 S. C. 472. *A deed intended as a mortgage has all of its incidents:* 1 McM. Eq. 13.; 21 S. C. 399; 37 S. C. 497; 26 S. C. 244. *Plaintiff is not estopped by lapse of time:* 1 Jones on Mtg., sec. 330; 77 Am. Dec. 558; 31 N. E. 597.

October 1, 1912. The opinion of the Court was delivered by

MR. JUSTICE WATTS. This action was commenced by the plaintiff against the defendant on January 21, 1911, and was in a general nature an action to declare as a mortgage a deed. absolute in form, conveying realty and transferring personalty, dated October 25, 1894; for an accounting of the rents and profits of the realty and a partition and division of the realty as between tenants in common. The answer denies that there was any understanding between the parties that the deed was a mortgage, and alleges that the deed was a deed absolute and the consideration an existing indebtedness between the parties and alleges facts setting up the defenses of laches and estoppel; also, invokes the

equity of the Court not to aid the plaintiff in enforcing an alleged agreement by way of secret trust, where the plaintiff's purpose was to sequestrate property from his creditors. The cause was heard by his Honor, Judge Gage, on the pleadings and testimony taken before the master, who filed his decree in September, 1911, granting the relief asked for in the complaint. Thereupon, defendant appealed and asks reversal of the same.

For a proper understanding, the decree of Judge Gage should be set out in the report of the case. The exceptions are 25 in number. Exceptions 1, 2, 3 and 4, question the correctness of his ruling in holding the deed of October 24, 1896, to be a mortgage and not a deed absolute.

Exceptions 5, 6, and 7, in holding certain parol testimony competent and admitting the same.

Exceptions 8, 9, 10 and 11, question his Honor's construction and findings as to the effect of certain letters and leases introduced in evidence.

Exceptions 12, 13, and 14, question his holding and finding as to plaintiff's right to redeem and that the doctrine of estoppel does not apply under the facts of the case and the testimony does not sustain the doctrine of estoppel. The other exceptions complain of the finding of facts by the Judge, and except to pretty much all of his findings of fact and his conclusions of law. We will not undertake to discuss the exceptions in the case *seriatim*, but will try to dispose of them under general heads.

The pivotal point in the case hinges upon the question of law whether the conveyance of Leland to Morrison in October, 1894, was what it purported to be, a deed absolute, or a mortgage, and if it was intended as a mortgage, has Leland by his conduct and acts so conducted himself during this time as to mislead Morrison to his prejudice and to be guilty of such laches as to defeat his contention?

We will first consider and dispose of the exceptions which complain of error on the part of his Honor in admitting

parol testimony. It will be borne in mind that the evidence in this case was taken before the master, and, under the law, it is his duty to take all of the testimony offered and report it to the Court. Even if incompetent testimony was in evidence, as this was not a jury trial but a trial before the Judge, it is reasonable to suppose his Honor in reaching his conclusions as to the facts of the case did not base his decision upon anything but competent, relevant, testimony.

There is no doubt that testimony is competent to show that a deed, absolute on its face, is in reality a mortgage and that this may be shown by parol evidence. *Brownlee* v. *Martin,* 21 S. C. 399; *Tant* v. *Guess,* 37 S. C. 498, 16 S. E. 472; *Creswell* v. *Smith,* 61 S. C. 579, 39 S. E. 757.

His Honor committed no error in admitting this testimony, and he having been satisfied by all of the competent testimony in the case that the purported deed was intended by the parties to be a mortgage and not a deed, and this being conclusively proven by the letter of Morrison to Leland, dated October 24, 1894. As to the exceptions of his Honor's finding of fact in reference thereto. For the reasons stated by the Circuit Judge, this Court is satisfied with his findings. "It was incumbent on the appellant to satisfy this Court by the preponderance of the evidence that his Honor, the presiding Judge, erred in his findings of fact which he has failed to do." *Hickson Lumber Company* v. *Stallings, S. C.,* 90 S. C. 473, and these exceptions are overruled.

Having concurred with his Honor in his finding that the deed was intended as a mortgage, we will next consider has Leland so conducted himself as to have his claim that it was intended as a mortgage to be defeated by laches, estoppel or any other cause by the action and conduct of Leland during this time.

There is no doubt that where a deed, though absolute in form, is shown to be intended as a security for the payment for a debt, it will always remain a security until foreclosed by some judicial proceeding or unless the party deprives himself of the interest he has in the property by some subsequent conveyance or relinquishment of interest.

· In *Walling* v. *Aiken,* McMullins' Eq., vol. I, page 13, the Court says: "We concur very fully with the presiding Chancellor, that the conveyances of the lands by Neely and Kennedy, connected with the written agreement between the complainant and the defendant, constitute a mortgage or security. And it is the well known rule of the Court that that which was originally intended as a security, shall never be turned into an absolute conveyance. Even if it be expressly stipulated, that if the money be not paid at a given day, the title shall be absolute, and the estate irredeemable; this stipulation operates nothing. And it is equally incompetent to stipulate from what source the funds to redeem shall be derived. The mortgagee is considered in this Court only as a creditor, and all that he is entitled to is his money, coming at what time (within the known limits), or from what source, it may."

In *Brownlee* v. *Martin,* 21 S. C. 400, this language is used by Chief Justice McIver: "The law looks with jealousy and suspicion upon all dealings between the mortgagee and the mortgagor, from the supposed influence which the former has over the latter. If, therefore, a deed, absolute on its face, is shown (as it may be shown by parol evidence) to have been executed merely as a security for a debt, it will operate only as a mortgage, and it cannot be converted by any subsequent written agreement into an absolute conveyance, unless such subsequent agreement is based upon a sufficient consideration, and is shown to have been fairly made, without undue influence by the creditor; and the burden of showing this is upon the mortgagee. In other words, it must amount to a sale of the equity of redemption,

fairly made, upon sufficient consideration." These views are fully supported by authority. *Russell* v. *Southard,* 12 How. 139, recognized in *Lee* v. *Lee,* 11 Rich. Eq. 582, and followed by *Babcock* v. *Wyman,* 19 How. 289; *Villa* v. *Redriquez,* 12 Wall. 323; *Morgan* v. *Shinn,* 15 Wall. 105; *Pough* v. *Davis,* 96 U. S. 332; *Brick* v. *Brick,* 98 U. S. 514.

This doctrine is adhered to and affirmed in the case of *Tant* v. *Guess,* 37 S. C. 497, 16 S. E. 472.

Applying the facts of the case to these decisions, the irresistible conclusion is that Morrison only held one-half of the land as security for a debt, and that he and Leland are tenants in common of the land in dispute unless Leland is estopped by lapse of time or some other good cause from asserting his right to have deed in question declared a mortgage or security to one-half interest.

Jones on Mortgages, vol. I, sec. 330, says: "Delay in asserting an absolute deed to be a mortgage has not the same effect upon the rights of the parties that attends delay in seeking to enforce in equity the performance of an executory contract. Once a mortgage, always a mortgage, is the maxim of the law, and payment does not stand on the footing of performance in equity. The character of the deed being fixed by the evidence as conditional, the mortgagor has the same time to make payment that any other debtor has. The right to foreclose and the right to redeem are reciprocal, and if one is barred the other is also barred. The only effect that delay can have in such a case is in its bearing on the primary question of mortgage or no mortgage. The poverty of the mortgagor, and many other circumstances, may sufficiently explain this. No lapse of time short of that which is sufficient to bar the action will prevent the introduction of parol evidence to show a deed was "intended as a mortgage."

In *Anding* v. *Davis,* 77 American Decisions, 550, we find: "Parol evidence is admissible to show that deed absolute on its face, was intended by the parties to have operation only

as a mortgage; and it is immaterial in this respect, as between the parties, whether the debt intended to be secured was then contracted by the mortgagor, or was contracted for the purpose of securing a pre-existing debt. Complainant's right, if competent in its inception to be established by parol evidence, will not be lost by any lapse of time not sufficient to bar it by the statute."

Under the law of this State the life of a mortgage is twenty years. Any time during that period, the owner of it has the right to foreclose it and if the statute of limitations does not bar the right to foreclose, it would not bar the right to redeem. The right to foreclose and the right to redeem are reciprocal. When the right of one exists the other exists. When one is barred, the other is barred. The question presented by these exceptions are dependent upon the findings of fact. For the reasons stated by his Honor, the Circuit Judge, this Court is satisfied with his findings of fact, mentioned in the assignment of error, and these exceptions are overruled. These conclusions practically dispose of the whole case, and while the testimony shows that Morrison behaved in the most lenient and forebearing manner with Leland and treated him with the greatest consideration and used his credit by borrowing money, when it was hard to do, and befriended him in every way and patiently tried to get the matter adjusted on the most generous terms and honestly thought later that he had an absolute deed to the land, we are constrained to hold that the deed was a mortgage, and that Leland has the right to redeem. That Morrison should have foreclosed and his leniency, forbearance and generosity has been his undoing.

This Court is satisfied with the finding of facts, set out in the assignment of error on the part of his Honor, the Circuit Judge, that the Court will not aid the plaintiff in enforcing an alleged agreement, by way of secret trust, where the purpose of the plaintiff was to sequestrate property from his creditors, for the reasons stated

by the Circuit Judge.   We may say, that the appellant has failed to convince this Court that there was error in the particulars mentioned in the other exceptions.   All exceptions are, therefore, overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE FRASER *did not sit in this case.*